UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

GREG SCHMIDT,

    Plaintiff,

v.

UNITED STATES ARMY CORPS OF
ENGINEERS,

    Defendant.

_____/

Case No. 2:08-cv-0076
HON. R. ALLAN EDGAR

**MEMORANDUM**

Plaintiff Greg Schmidt brings this action against the United States Army Corps of Engineers ("USACE") seeking judicial review of the denial of a building permit pursuant to the Clean Water Act, 33 U.S.C. § 1344 *et seq.* ("CWA"). Plaintiff seeks review of the USACE's denial of a permit to construct a residence and associated facilities on his property in Chippewa County, Michigan. The USACE denied the permit application as "contrary to the overall public interest" pursuant to Section 404(1)(b) of the CWA.

The USACE moves to dismiss Count II of plaintiff's action pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for lack of jurisdiction and for failure to state a claim upon which relief can be granted. [Court Doc. No. 4]. Plaintiff has failed to respond to the motion to dismiss. The court has reviewed the record and the applicable law and has determined that USACE's motion will be GRANTED.

**I.    Background**

Plaintiff's complaint states the following background facts:

Plaintiff is the owner of certain real property located in Chippewa County,

Michigan (hereafter "the project site"). Plaintiff seeks to construct a residence and associated facilities on the project site . . . . The [CWA] requires a permit from Defendant USACE to perform certain activities affecting the waters of the United States. . . .

The project site is located on the shore of the St. Mary's River. The St. Mary's River constitutes "waters of the United States" as that term is defined in 33 CFR 328.3(a)(1). Certain areas of the project site may constitute "wetlands" as defined in 33 CFR 328.2(b), which are identified as "waters of the United States" under the Act. . . . The [Michigan Department of Environmental Quality] has issued a permit for Plaintiff's project. In October, 2000, Plaintiff submitted a joint application for a permit to the USACE to discharge fill into wetlands on the project site. Via correspondence dated September 18, 2006, USACE's District Engineer, Lt. Col. William J. Leedy, informed Plaintiff that the USACE had "determined that the project is contrary to the overall public interest" and denied Plaintiff's application for a permit under Section 404(1)(b) of the Clean Water Act. . . .

Plaintiffs properly filed an administrative appeal of the USACE's initial determination pursuant to 33 CFR 331.5. Plaintiffs' [sic] appeal was heard by the USACE Division Engineer according to the procedures set forth in 33 CFR 331.9(a). At the conclusion of the administrative appeal process the USACE's Division Engineer issued a decision in this matter pursuant to 33 CFR 331.9(b). . . . As set forth in Exhibit B, the USACE Division Engineer remanded this matter to the USACE District Engineer with specific instructions to review the administrative record, and to further analyze or evaluate specific issues.

On January 28, 2008, the USACE District Engineer completed his review of the administrative record and issued yet another denial of Plaintiff's application.

[Court Doc. No. 1, "Complaint," ¶¶ 5-25].

In initially denying the permit the USACE District Engineer explained:

After due consideration of the record and the appropriate regulations, we have determined that the project is contrary to the overall public interest, and have decided to deny your request for a permit.

The entire parcel proposed for development is within the 100-year flood plain of the St. Marys River. On this parcel, the proposed discharge area is in a scrub/shrub and emergent wetland complex that is below the ordinary high water mark (OHWM) of the St. Marys River. These wetlands perform many important functions related to the maintenance of water quality, flood storage, and sediment retention, as well as valuable habitat functions related to the maintenance of health aquatic, semi-aquatic, and terrestrial ecosystems.

. . . The project as proposed would have long term, adverse impacts on the functions that the site currently provides, including water quality, flood plain

> values, wetlands, aquatic organisms, wildlife, and conservation. The proposed project would also construct a residence and wastewater treatment system in an area of known flood potential. Based on the quality of the resources that would be affected, the benefits of the proposed project do not outweigh the detriments to the public interest.

[Court Doc. No. 1-2, Permit Denial Letter dated September 18, 2006]. On administrative appeal, the Review Officer considering the appeal required the District Engineer to reconsider several of his reasons for denial of the permit. [Court Doc. No. 1-3]. On January 28, 2008 the U.S. Army District Engineer issued a letter indicating that he had reviewed the original decision to deny the permit and was reaffirming the decision to deny the permit request. [Court Doc. No. 1-4].

Plaintiff seeks reversal in this court of the USACE's action on the grounds that the USACE's denial of the permit constituted arbitrary and capricious action. Plaintiff also asserts in Count II that the denial of the permit constituted an unconstitutional taking of property without compensation in violation of the Fifth Amendment to the United States Constitution. It is this Count that USACE seeks to dismiss.

## II. Standard of Review

Defendant USACE moves to dismiss Plaintiff's takings claim pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

### A. Dismissal Pursuant to Fed. R. Civ. P. 12(b)(1)

"When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Madison-Hughes v. Shalala*, 80 F.3d 1121, 1130 (6th Cir. 1996). Further, a district court may "resolve factual disputes when necessary to resolve challenges to subject matter jurisdiction." *Id.* The Sixth Circuit adheres to the standard of review for Rule 12(b)(1) motions explained in *Mortensen v. First Federal*

*Savings and Loan Ass'n*, 549 F.2d 884, 890 (3d Cir. 1977):

> The basic difference among the various 12(b) motions is, of course, that 12(b)(6) alone necessitates a ruling on the merits of the claim, the others deal with procedural defects. Because 12(b)(6) results in a determination on the merits at an early stage of plaintiff's case, the plaintiff is afforded the safeguard of having all its allegations taken as true and all inferences favorable to plaintiff will be drawn. The decision disposing the case is then purely on the legal sufficiency of plaintiff's case: even were plaintiff to prove all its allegations he or she would be unable to prevail. In the interests of judicial economy it is not improper to dispose of the claim at that stage. . . .
> The procedure under a motion to dismiss for lack of subject matter jurisdiction is quite different. At the outset we must emphasize a crucial distinction, often overlooked between 12(b)(1) motions that attack the complaint on its face and 12(b)(1) motions that attack the existence of subject matter jurisdiction in fact, quite apart from any pleadings. The facial attack does offer similar safeguards to the plaintiff: the court must consider the allegations of the complaint as true. The factual attack, however, differs greatly for here the trial court may proceed as it never could under 12(b)(6) or Fed.R.Civ.Pro. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction–its very power to hear the case–there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover the plaintiff will have the burden of proof that jurisdiction does in fact exist.

*RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996) (quoting

*Mortensen*, 549 F.2d at 890-91).

    **B.    Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court "must read all well-pleaded allegations of the complaint as true." *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997) (citing *Bower v. Federal Express Corp.*, 96 F.3d 200, 203 (6th Cir. 1996)). In

addition, a court must construe all allegations in the light most favorable to the plaintiff. *Bower*, 96 F.3d at 203 (citing *Sinay v. Lamson & Sessions*, 948 F.2d 1037, 1039 (6th Cir. 1991)).

The Supreme Court has recently explained "an accepted pleading standard" that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, __ U.S. ___, 127 S.Ct. 1955, 1969 (2007). The complaint "must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory." *Weiner*, 108 F.3d at 88 (citing *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993)). In *Twombly* the Supreme Court emphasized that:

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, . . . Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

127 S.Ct. at 1964-65 (citations omitted). *See also, Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932 (1986) (noting that "[a]lthough for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation").

**III. Analysis**

USACE claims that the Court of Federal Claims has exclusive jurisdiction over Plaintiff's taking claim against it pursuant to the Tucker Act, 28 U.S.C. § 1491(a)(1).

The USACE is correct that "[j]urisdiction over any suit against the Government requires a clear statement from the United States waiving sovereign immunity." *United States v. White*

*Mountain Apache Tribe*, 537 U.S. 465, 472, 123 S.Ct. 1126, 155 L.Ed.2d 40 (2003) (citing *United States v. Mitchell*, 445 U.S. 535, 538-39, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980)); *see also*, *Federal Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 475, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994).  In addition, a consent to sue must not be inferred, but rather, must be "unequivocally expressed."  *White Mountain Apache Tribe*, 537 U.S. at 472, 123 S.Ct. 1126 (quoting *Mitchell*, 445 U.S. at 538).

The Tucker Act contains such a waiver.  *White Mountain Apache Tribe*, 537 U.S. at 472 (citing *United States v. Mitchell*, 463 U.S. 206, 212, 103 S.Ct. 2961 (1983)).  The Tucker Act states in part:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1).  The Little Tucker Act also creates limited jurisdiction in district courts for certain disputes against the United States not exceeding $10,000.  28 U.S.C. § 1346(a)(1).

The first question for this Court is whether Plaintiff's taking claim against USACE is an action within the exclusive jurisdiction of the Court of Claims pursuant to the Tucker Act.  The Sixth Circuit has determined that "if an action rests within the exclusive jurisdiction of the Claims Court under the Tucker Act, 28 U.S.C. §§ 1346 and 1491, the district court does not have jurisdiction regardless of other possible statutory bases."  *A.E. Finley & Assoc., Inc. v. United States*, 898 F.2d 1165, 1167 (6th Cir. 1990) (citing *Amoco Production Co. v. Hodel*, 815 F.2d 352, 359 (5th Cir. 1987)).  A claim "seeking compensation for a taking" over $10,000 is a "claim properly brought in the Court of Claims."  *Duke Power Co. v. Carolina Environmental Study*

*Group*, 438 U.S. 59, 71 n. 15, 98 S.Ct. 2620 (1978); *Regional Rail Reorganization Act Cases*, 419 U.S. 102, 127 (1974); *see also, National Mining Ass'n v. Kempthorne*, 512 F.3d 702, 711 (D.C. Cir. 2008); *Gordon v. Norton*, 322 F.3d 1213, 1216 (10th Cir. 2003).

In *United States v. Riverside Bayview Homes, Inc.* the Supreme Court addressed the remedies available to a landowner injured by the denial of a fill permit by the USACE:

> Because the Tucker Act, 28 U.S.C. § 1491, which presumptively supplies a means of obtaining compensation for any taking that may occur through the operation of a federal statute, is available to provide compensation for takings that may result from the Corps' exercise of jurisdiction over wetlands, the Court of Appeals' fears that application of the Corps' permit program might result in a taking did not justify the court in adopting a more limited view of the Corps' authority than the terms of the relevant regulation might otherwise support.

474 U.S. 121, 128, 106 S.Ct. 455 (1985) (citations omitted). The Court explained in a footnote the exclusive jurisdiction of the Court of Claims for takings claims over a certain amount:

> Because the Corps has now denied respondent a permit to fill its property, respondent may well have a ripe claim that a taking has occurred. On the record before us, however, we have no basis for evaluating this claim, because no evidence has been introduced that bears on the question of the extent to which denial of a permit to fill this property will prevent economically viable uses of the property or frustrate reasonable investment-backed expectations. In any event, this lawsuit is not the proper forum for resolving such a dispute: if the Corps has indeed effectively taken respondent's property, respondent's proper course is not to resist the Corps' suit for enforcement by denying that the regulation covers the property, but to initiate a suit for compensation in the Claims Court.

474 U.S. at 129 n. 6; *see also, May v. United States*, 80 Fed. Cl. 442, 447 (Ct. Fed. Cl. 2008) (noting that suit against the Army Corps of Engineers is a suit against the United States for Tucker Act purposes and that jurisdiction under the Tucker Act is appropriate for a "'nonfrivolous takings claim founded upon the Fifth Amendment'") (quoting *Moden v. United States*, 404 F.3d 1335, 1341 (Fed. Cir. 2005)).

In *Anchor Pointe Boat-a-Minium Assoc., Inc. v. Meinke* the Sixth Circuit addressed whether a district court had jurisdiction over a landowner's Fifth Amendment takings claim for equitable relief pertaining to the USACE's issuance of a permit to another landowner. 860 F.2d 215 (6th Cir. 1988). The Sixth Circuit reviewed the district court's jurisdiction over the takings claim:

> Even if the Government could be considered as having taken plaintiffs' land, plaintiffs are not entitled to injunctive relief. Their remedy is limited to seeking just compensation under the Tucker Act, 28 U.S.C. §§ 1346(a)(2) & 1491. Consequently, the district court lacked jurisdiction to entertain [plaintiff's] claim couched solely in equitable relief. . . . Furthermore, . . . the Tucker Act divests the district court of jurisdiction over [plaintiff's] claim for damages in excess of $10,000. The Tucker Act vests exclusive jurisdiction over money claims against the United States greater than $10,000 in the United States Claims Court. It is only under the terms of the Tucker Act that the United States waives its sovereign immunity to such claims, and this consent to suit is a jurisdictional prerequisite. . . . Exclusive jurisdiction over [plaintiff's] claim that the issuance of the permit amounted to a taking of property without just compensation rested with the United States Claims Court. Accordingly, this court concludes that the district court lacked jurisdiction over [plaintiff's] Fifth Amendment taking claim, and its resolution of that claim must, therefore, be vacated.

860 F.2d 215, 218-19 (6th Cir. 1988).

In this action the Complaint does not state any amount of damages. Thus, it is not entirely clear that Plaintiff is seeking more than $10,000 in damages. However, a plaintiff bears the burden of demonstrating that his claims do not exceed the $10,000 in damages required for district court jurisdiction under the Little Tucker Act. *See e.g., Enplanar, Inc. v. Marsh*, 829 F.Supp. 848, 851 (S.D. Miss. 1992), *aff'd* 25 F.3d 1043 (5th Cir. 1994); *Ware v. United States*, 626 F.2d 1278, 1286 (5th Cir. 1980); *Clark v. United States*, 691 F.2d 837, 840 (7th Cir. 1982) (noting that "[w]ithout a statutory waiver, the district courts have no jurisdiction over a claim for damages against the United States, and the Tucker Act bars their jurisdiction over claims like

these in excess of $10,000"). Federal courts have held that district courts may assert jurisdiction over Tucker Act claims as long as the plaintiff waives any recovery of damages in excess of $10,000. *See e.g., Roedler v. Dep't. of Energy*, 255 F.3d 1347, 1351 (Fed. Cir. 2001); *Smith v. Orr*, 855 F.2d 1544, 1553 (Fed. Cir. 1988); *Goble v. Marsh*, 684 F.2d 12, 15 (D.C. Cir. 1982). In this action, because Plaintiff has failed to respond to the USACE's motion for partial summary judgment and has failed to plead an amount of damages in his complaint, this court is forced to conclude that he has not waived the right to obtain damages greater than $10,000.

Because Plaintiff has not waived the right to claim more than $10,000 in damages and is seeking compensation for an alleged violation of the Fifth Amendment, exclusive jurisdiction over this claim rests in the Court of Claims. For this reason, Plaintiff's taking claim must be DISMISSED.

Finally, there is an additional reason why Plaintiff's Count II must be dismissed. Count II asserts that Plaintiff suffered an "unlawful taking of property." However, the Federal Circuit, which hears appeals of Little Tucker Act claims pursuant to 28 U.S.C. § 1295(a)(2), has explained:

> . . . in a takings case we assume that the underlying governmental action was lawful, and we decide whether the governmental action in question constituted a taking for which compensation must be paid. [The appellant's] complaints about the wrongfulness of the [government action] are therefore not properly presented in the context of its takings claim. The only question before us is whether [the appellant] was entitled to be compensated for the effects of that action.

*Rith Energy, Inc. v. United States*, 270 F.3d 1347, 1352 (Fed. Cir. 2001); *see also, Acadia Tech., Inc. v. United States*, 458 F.3d 1327, 1331 (Fed. Cir. 2006). Therefore, Plaintiff's complaints about the unlawful nature of the denial of the permit are not appropriate questions if the Plaintiff

seeks compensation pursuant to the Fifth Amendment.

### III. Conclusion

For the reasons stated *supra*, Plaintiff's Count II alleging an unlawful taking of property in violation of the Fifth Amendment of the U.S. Constitution will be DISMISSED.

A separate order will enter.

Dated: 7/15/08                   /s/ R. Allan Edgar
                                 R. ALLAN EDGAR
                                 UNITED STATES DISTRICT JUDGE